UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 3:02-CR-00213 (CFD) |
| VS. | : | |
| PHILLIP STEWART | : | JUNE 9, 2006 |

### SENTENCING MEMORANDUM ON BEHALF OF PHILIP STEWART

Through counsel, Philip Stewart files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a). Mr. Stewart respectfully requests that the Court consider several important circumstances of this case in fashioning a sentence that is below the recommended sentencing guidelines. Alternatively, and in addition, he claims that the court should reduce his guidelines offense level by three points for his timely acceptance of responsibility, despite the government's claim that he is not entitled to it.

### SENTENCING UNDER BOOKER

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holdings in Blakely v. Washington, 542 U.S. 296 (2004) and Apprendi v. New Jersey, 530 U. S. 466 (2000) apply to the Federal Sentencing Guidelines. United States v. Booker, 543 U.S. 220, 244 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court. Id. at 235. Accordingly, reaffirming its holding in Apprendi, the Court concluded that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable

doubt." Id. at 244.[1]

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that made the Sentencing Guidelines mandatory, 18 U.S.C. § 3553(b)(1), or which rely upon the Guideline's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding. Booker, 543 U.S. at 244. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." Id. at 246.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker, "requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)." Booker, 543 U.S. at 246-47. Thus, under Booker, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary . . . ." Section 3553(a) states that such purposes are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

---

[1] It should be noted that the fact-of-prior-conviction exception to the Apprendi rule is based on Almendarez-Torres v. United States, 523 U.S. 224 (1998). The continued vitality of this case and the exception it created has been called in to question not only by the broad reasoning of Booker itself, which would seem to apply to all enhancement facts, including facts of prior conviction, but also more recently by Shepard v. United States, 544 U.S. 13 (2005). Shepard sharply limits the Almendarez-Torres exception to the fact of prior conviction as determined by the judicial record, and excludes facts about the conviction which are not contained in such conclusive records. As Justice Thomas notes, moreover, five justices agreed that Almendarez-Torres was wrongly decided. 544 U.S. at 27-28 (Thomas, J., concurring).

JON L. SCHOENHORN & ASSOCIATES, LLC
ATTORNEYS AT LAW
108 OAK STREET ■ HARTFORD, CT 06106-1514 ■ TEL. (860) 278-3500 ■ JURIS NO. 406505 ■ FEDERAL BAR NO. ct 00119

2

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1));

2) "the kinds of sentences available" (§ 3553(a)(3));

3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§ 3553(a)(6)); and

4) "the need to provide restitution to any victims of the offense." (§ 3553(a)(7)).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." (emphasis added). Under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. See U.S.S.G. § 5H1. See also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb 3, 2005) (Simon, J.) (taking into account fact that defendant, would, upon his release from prison, have a very low likelihood of recidivism due to his age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May (2004)); United States v. Naylor, 359 F. Supp. 2d 521 (W.D. Va. 2005) ( Jones, J.) (concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth when he committed his predicate offenses and noting that in Roper v. Simmons. 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant

JON L. SCHOENHORN & ASSOCIATES, LLC

ATTORNEYS AT LAW
108 OAK STREET ■ HARTFORD, CT 06106-1514 ■ TEL. (860) 278-9500 ■ JURIS NO. 406505 ■ FEDERAL BAR NO. ct 00119

3

differences in moral responsibility for crime between adults and juveniles). The directives of Booker and § 3553(a) make clear that courts may no longer uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the § 3353 (a) factors, many of which the guidelines either reject or ignore." United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.). As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker." United States v. Jaber, 362 F. Supp.2d 365 (D. Mass. 2005) (Gertner, J.). See also, United States v. Ameline, 400 F. 3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining and appropriate individualized sentence"), reh'g en banc granted, 401 F. 3d 1007 (9th Cir. 2005). Justice Scalia explained this issue in his dissent from Booker's remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise - if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed - its opinion would surely say so.

Booker, 543 U.S. at 304-06 (Scalia, J., dissenting in part). Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

     In sum, in every case, a sentencing court must now consider all of the § 3553 (a) factors, not just guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. Where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. See United States v. Denardi, 892 F. 2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since §

JON L. SCHOENHORN & ASSOCIATES, LLC

ATTORNEYS AT LAW
4
108 OAK STREET ■ HARTFORD, CT 06106-1514 ■ TEL. (860) 278-3500 ■ JURIS NO. 406505 ■ FEDERAL BAR NO. ct 00119

3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

### Application of the Statutory Sentencing Factors to the Facts of this case

The following constitutes the sentencing factors that a judge should consider:

1. The Need for the Sentence Imposed To Promote Certain Statutory Objectives:

(A) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

2. The Kinds of Sentences Available

In Booker, the Supreme Court severed and excised 18 U.S.C. § 3553 (b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. Booker, supra, 543 U.S. at 244. This renders the sentencing guidelines advisory. Id. 18 U.S.C. §§ 3551, 3559, 3561, 3571, 3581 provide this Court with the types of available sentences based upon defendant's conviction.

This case involved offenses committed prior to Booker. The Court should consider the due process/*ex post facto* issue that the sentence cannot exceed the top of the relevant guideline range as calculated on the basis of facts set forth in the plea or admitted by the defendant. This includes the government's contention that the defendant should get no credit for his acceptance or responsibility, and thus be exposed to life imprisonment.

3. The Sentencing Range Established by the Sentencing Commission.

The agreed upon offense level under provisions of the Guidelines is 32, as stated in paragraph 10 of the PSR, involving offense conduct of between 50 and 150 grams of cocaine base. However, because the defendant qualifies as a "career offender" his adjusted level is 34, after a 3-level reduction for

JON L. SCHOENHORN & ASSOCIATES, LLC

ATTORNEYS AT LAW
108 OAK STREET ■ HARTFORD, CT 06106-1514 ■ TEL. (860) 278-9500 ■ JURIS NO. 406505 ■ FEDERAL BAR NO. ct 00119

5

acceptance of responsibility. The defendant submits that his guideline range is, therefore between 262 to 327 months. Without the acceptance of responsibility, the government notes, the defendant's guideline range is 360 months to life.

The defendant submits that his guideline range remains between 262 to 327 months, and that mere arrests, that were subsequently nolled, should not be considered to deny him this 3-level reduction. While the probation officer correctly notes that nolled cases may be reopened under state law within 13 months of the termination of the prosecution; see, generally, Conn. Gen. Stat. § 54-142a; such action by the State of Connecticut would require the initiation of a new prosecution by warrant. At no time does the probation officer or the government suggest, that such action is contemplated by state officials.

The probation officer and government urge this court to deny a reduction of two or three levels for acceptance of responsibility, despite the defendant's timely guilty plea due to allegations of subsequent involvement in criminal activity, and positive drug tests. The criminal charges in state court were *nolled* in November, 2005. Aware of the impact that uncharged conduct may have on a defendant's sentence, the Second Circuit has held that relevant conduct must be proved by "specific evidence." *See, e.g.,* United States v. Shonubi, 103 F.3d 1085, 1089 (2d Cir. 1997) ("Shonubi IV"); United States v. Shonubi, 998 F.2d 84, 89-90 (2d Cir. 1993) ("Shonubi II") ("This careful practice is essential where a defendant's sentence depends in such large measure on the amount of drugs deemed attributable to his conduct."). Specific evidence is evidence such as drug records seized from the defendant, admissions by the defendant, or live testimony. *See* Shonubi IV, 103 F.3d at 1089; *see also* United States v. Moreno, 181 F.3d 206, 214 n.3 (2d Cir. 1999) (testimony of witness who personally observed drug sales and had personal knowledge of volume of business conducted by defendants "is precisely the type of specific evidence upon which a district court may rely in making a sentencing determination"). Mere arrests, even if based upon a finding of probable cause, is not sufficient.

The Second Circuit has also held repeatedly that "disputed facts relevant to sentencing, even under the Guidelines, need be established only by a preponderance of the evidence." United States v. Concepcion, 983 F.2d 369, 388 (2d Cir. 1992). After the Supreme Court's decision in United States v.

JON L. SCHOENHORN & ASSOCIATES, LLC

ATTORNEYS AT LAW
108 OAK STREET ■ HARTFORD, CT 06106-1514 ■ TEL. (860) 278-9500 ■ JURIS NO. 406505 ■ FEDERAL BAR NO. ct 00119

6

Watts, 516 U.S. 148 (1997), upholding the use of acquitted conduct as a source of relevant conduct to be used at sentencing, courts have been free to consider such information, as long as it is proved by a preponderance.  In United States v. Cordoba-Murgas, 233 F.3d 704 (2d Cir. 2000), the Court held that the preponderance standard applies to fact-findings for both upward adjustments and upward departures, even where they will have a "dramatic effect" on the sentence.  Id. at 708-710.  However, citing United States v. Gigante, 94 F.3d 53 (2d Cir. 1996) and Concepcion, the Court in Cordoba-Murgas encouraged downward departures based on the questionable weight of such disputed evidence:  "We believe that under the combination of circumstances that may be present here, including (i) an enormous upward adjustment (ii) for uncharged conduct (iii) not proved at trial and (iv) found only by a preponderance of the evidence, (v) where the court has substantial doubts about the accuracy of the finding, the court would be authorized to depart downward from the scheduled adjustment by reason of this extraordinary combination of circumstances."  Cordoba-Murgas, supra, 233 F.3d at 709.

In United States v. White, 240 F. 3d 127 (2d Cir. 2001), the Second Circuit suggested that an upward adjustment attributable to uncharged conduct need not be "enormous" to justify a downward departure based on the wight of the evidence supporting the adjustment.  Citing Cordoba-Murgas, the Court stated: "We have suggested that a sentencing court may depart downward where findings as to uncharged relevant conduct made by the sentencing court based on a preponderance of the evidence substantially increase the defendant's sentence under the Sentencing Guidelines."  White, 240 F.3d at 137 (emphasis added).

Although the defendant is unable to find a specific case on point, the same rationale certainly holds true for allegations that the defendant did not accept responsibility for his acts, by continuing to engage in criminal activity after his plea, where such activity is only an allegation, that has not been pursued by prosecutors.  In order for the court to credit the governments assertion that the defendant continued to engage in criminal activity, the misconduct must be proved by a preponderance of the evidence.  A mere arrest, even with a finding of probable cause, is not the equivalent of preponderance of the evidence, particularly where the particular allegations have not been pursued.

JON L. SCHOENHORN & ASSOCIATES, LLC

ATTORNEYS AT LAW
7
108 OAK STREET ■ HARTFORD, CT 06106-1514 ■ TEL. (860) 278-3500 ■ JURIS NO. 406505 ■ FEDERAL BAR NO. ct 00119

Consequently, this Court is urged to reject consideration of uncharged allegations of continued criminal conduct, either because a police report from a nolled charge is either insufficient as a matter of law, or as a matter of this Court's discretion.

4. The Need To Avoid Unwarranted Disparities: This issue is not relevant to the Defendant's sentencing.

5. The need to provide restitution to any victims of the offense. This is a drug case. Therefore, this issue is not relevant to the defendant's sentencing.

## Non-guidelines Considerations

**1. MR. STEWART WAS EXPOSED TO DOMESTIC VIOLENCE.**

A court can consider a defendant's troubled upbringing and his exposure to domestic violence as a child. See, United States v. Lopez, 938 F. 2d 1293, 1298 (D.C. Cir. 1991); and Penry v. Lynaugh, 492 U.S. 302, 319 (1989). In the case at bar, the PSR has documented Mr. Stewart's exposure to domestic violence as a child, sometimes fighting back with pots and pans but ultimately unable to ward of the father's physical super. To an extent, Mr. Stewart's criminal conduct and self-image may be attributable to his childhood background in verbal and physical abuse while growing up.

**2. MR. STEWART WAS EXPOSED TO SUBSTANCE ABUSE AS A CHILD BY FAMILY MEMBERS AFTER HIS FATHER ABANDONED THE FAMILY.**

Mr. Stewart was exposed to substance abuse beginning at the age of 12, as documented in the PSR, when his father left the family. His uncle drank a lot of beer and allowed him to join in this activity at a young age. Most of his substance abuse involved hard liquor and marijuana. There is strong suggestion, as conceded by Mr. Stewart himself and the probation department's administration of urinalysis, that he has struggled with marijuana use even as a young adult. As the PSR notes, at paragraph 33: The defendant grew up in a drug-infested neighborhood as a child and began selling his first drugs "in order to buy a pair of sneakers." The defendant's mother talks about how the father's departure affected her children, and had a deleterious affect on Mr. Stewart's emotional well being. Both the defendant and his mother note that Mr. Stewart's sister became mentally disabled at age 16, and

now receives Social Security benefits.

The Second Circuit has frequently reiterated the substantial sentencing discretion retained by District Court judges, even when the Sentencing Guidelines were mandatory, and the general appropriateness of exercising that discretion when warranted. *See, e.g.* United States v. Galante, 111 F.3d 1029, 1033 (2d Cir. 1997); United States v. Merritt, 988 F.2d 1298, 1306 (2d Cir. 1993); United States v. Correa-Vargas, 860 F.2d 35, 40 (2d Cir. 1988). In fact, several grounds for departure not otherwise sanctioned by the Guidelines have been upheld by the Second Circuit. *See, e.g.* United States v. Rivera, 192 F.3d 81, 85 (2d Cir. 1999) (childhood abuse which causes mental and emotional problems that contribute to the commission of the offense may be grounds for departure); Zecevic v. U.S. Parole Commission, 163 F.3d 731 (2d Cir. 1998) (aberrant behavior can justify a departure); United States v. Core, 125 F.3d 74 (2d Cir. 1997) (post-conviction rehabilitation warranted downward departure); United States v. Rioux, 97 F.3d 648 (2d Cir. 1996) (medical condition and civic and charitable good deeds warranted departure). Certain issues in the defendant's background deserve consideration by the court.

### 3. ADDITIONAL FAMILY CIRCUMSTANCES

The Second Circuit has emphasized that extraordinary family circumstances can provide an appropriate basis for a downward departure. Galante, *supra*, 111 F.3d at 1034-37; United States v. Ehkator, 17 F.3d 53 (2d Cir. 1994); United States v. Califano, 978 F.2d 65 (2d Cir. 1992) (per curiam); United States v. Johnson, 964 F.2d 124, 128-30 (2d Cir. 1992); United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1991); United States v. Sharpsteen, 913 F.2d 59, 63 (2d Cir. 1990). While the Commission undoubtedly "took ordinary family responsibilities into account when formulating the Guidelines," the Second Circuit in Johnson, *supra*, stated that "extraordinary circumstances . . . are by their nature not capable of adequate consideration" and "therefore may constitute proper grounds for departure." Id. at 128.

A district court is afforded broad discretion in deciding whether a defendant's family circumstances are exceptional to a degree sufficient to take the case out of the heartland. Galante, *supra*, 111 F.3d at 1037. Such a departure is grounded in the notion that courts wish to avoid inflicting undue

JON L. SCHOENHORN & ASSOCIATES, LLC

ATTORNEYS AT LAW
108 OAK STREET ■ HARTFORD, CT 06106-1514 ■ TEL. (860) 278-3500 ■ JURIS NO. 406505 ■ FEDERAL BAR NO. ct 00119

9

punishment on innocent children, spouses and other family members. *See, e.g.* United States v. Sprei, 145 F.3d 528, 535 (2d Cir. 1998) (departure may be warranted based on family circumstances where the family was uniquely dependent on the defendant's ability to maintain financial and emotional commitments); United States v. Hammond, 37 F. Supp.2d 204, 207 (E.D.N.Y. 1999) (sentence without downward departure would "contribute to the needless suffering of young, innocent children."); United States v. Rose, 885 F. Supp. 62 (E.D.N.Y. 1995) (departure appropriate to protect innocent family members who need the defendant); United States v. Deriggi, 893 F. Supp. 171, 182 (E.D.N.Y.), aff'd, 72 F.3d 7 (2d Cir. 1995) (desire not to inflict undue harm on innocent family members is sentencing consideration).

Until his most recent incarceration, the defendant played a close and important role in the care and upbringing of his 10-year-old daughter, Nikia, who resides with her mother. He saw her every day, took her places and assisted her with her homework. The PSR suggests that he was paying child support except when he was incarcerated from 1999 to 2001. Nikia's mother also told the probation officer that the defendant would stay with Nikia, while she worked second shift. Moreover, and more importantly, Nikia's other reports that her daughter has been experiencing problems in school, both academically and emotionally, as a result of her father's absence, and has been referred to the school psychologist and is being placed on medication.

### 3. OVERSTATEMENT OF CRIMINAL HISTORY

Finally, the defendant seeks a "horizontal departure" based upon the fact that his prior record that was used to place him in the career offender category over represented the seriousness of his criminal record. The Sentencing Commission specifically recognized this category of departure: "There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit future crimes." USSG § 4A1.3.

In United States v. Mishoe, 241 F.3d 214 (2d Cir. 2001), Judge Newman reiterated that any sentencing departures are "to be made on the basis of individualized consideration of the circumstances

of a defendant's case, rather than a general 'rule.'" <u>Id</u>. at 218.  The <u>Mishoe</u> Court also noted that while a generalized history of "street-level" drug dealing would not give rise to a basis for downward (or horizontal) departure, a sentencing court take into consideration such factors as the amount of drugs involved in prior offenses, the defendant's role in those offenses, and prior sentences imposed.  <u>Id</u>. at 219.  The court is asked to make a similar finding here.

     While the defendant clearly has a substantial record and 12 criminal history points, it should be noted that the May 2, 1994 incident involved a response to the day before where he was kidnapped and placed in the trunk of the car by the alleged "victim."  This should constitute a mitigating circumstance.  Furthermore, the incidents described in Paragraphs 23 through 26, all occurred within a few weeks and were all disposed of on the same day on August 27, 1997, yet equal 4 criminal history points.  Three of the four were complaints by the defendant's girlfriend, and mother of his child.  All were disposed of with fines.  Nevertheless, the probation officer counted the offense in paragraph 27 (another fine) for a total of 5 points under 4A1.1(c).  Finally, paragraphs 28 and 29 involve arrests that occurred within three weeks of each other in 1998, yet were disposed of on different days in 1999.  Although the defendant has not been able to fully confirm this information, it is believed that the July 28, 1998 incident actually was disposed of in New Britain (the docket number begins "H15N" which is a New Britain case – not Hartford, while the defendant was incarcerated, and thereafter the defendant was transferred to Manchester (the docket number begins "H12M" which indicates a Manchester case) – not Hartford – for disposition of the case in Paragraph 29.  Confirmation through the Connecticut court's administrative office corroborates that the June 24, 1999 disposition was in Manchester Superior Court.   While these dispositions do not necessarily imply that they should have been counted only once because of the concurrent nature of the charges, there is a strong likelihood that they would have been treated as completely concurrent and imposed on the same date, but for the fact the sentences were imposed in different jurisdictions, and the defendant could not appear in both courts on the same day.

     As Judge Newman noted, the "large disparity" between the degree of punishment imposed for the prior offenses and the sentence called for as a career offender here, may "constitute a mitigating

circumstance present 'to a degree' not adequately considered by the Commission." <u>Mishoe, supra</u> at 220. To suggest that the defendant should face life imprisonment, on this record, would put him in the same league as murderers, drug kingpins, and terrorists.

## CONCLUSION

Mr. Stewart presents to this Court a sad figure, facing the prospect of up to life imprisonment, for a relatively small narcotics trafficking case. While his prior record certainly places him in the category of a career offender, it is submitted that neither the guidelines themselves, nor his prior criminal history, accurately portray this man's ability to learn from mistakes and to be rehabilitated. For the foregoing reasons, Mr. Stewart submits that a sentence substantially below the recommended sentencing guidelines range is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553 (a). If the court does, in fact, believe that the guidelines range is appropriate, then it is requested that the court grant a reduction for his prompt acceptance of responsibility.

Dated at Hartford, CT this 9th day of June, 2006.

DEFENDANT, PHILLIP STEWART,

BY:_____
JON L. SCHOENHORN
Jon L. Schoenhorn & Associates, LLC

## CERTIFICATION

I hereby certify that on the above date, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

_____
Jon L. Schoenhorn

F:\SHARED\CLIENTS\Stewart\Stewart-sentencingmemo.wpd